UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

John Collins, et al.,

                Plaintiffs,

                                          **Hon. Hugh B. Scott**

                                          08CV59S

                v.

                                          **Report &**
                                          **Recommendation**

Michael B. Flynn et al.,

                Defendants.
_____

Before the Court are the following motions: plaintiffs' motion to remand (Docket No. 5); defendants' motion to dismiss (Docket No. 16); and defendant's alternative motion to change venue (Docket No. 18).

**Background**

The plaintiffs, John Collins and Collins, Collins & Donoghue, P.C. (referred to collectively as "Collins"), commenced this action in New York State Supreme Court against Michael B. Flynn, individually and as agent for CSX Transportation, Inc.; Flynn and Associates; Alan Hansen, individually and as agent for CSX Transportation, Inc.; and CSX Transportation, Inc. ("CSX"). The conduct underlying the plaintiffs' claims in this case arises in connection with another legal proceeding, Granfield v. CSX Transportation, Inc. (C.A. No. 06-30135-MAP)

1

pending in the United States District Court for the District of Massachusetts.  Collins is the attorney for the plaintiffs in that case; Flynn represents CSX in that matter.  Collins asserts that on September 21, 2007, Flynn filed a Memorandum of Law in the United States District Court for the District of Massachusetts which contained defamatory statements.  Collins asserts, upon information and belief, that the defamatory statements were authorized by CSX and its agent, Alan Hanson.(Complaint at ¶ 7).  The plaintiffs' claims are based upon the following alleged statements asserting that Collins:

    a.    artificially created a factual premise for whole-body-vibration lawsuits (CSX Memorandum of Law attached as Exhibit A to Complaint [hereafter referred to as the "CSX Memorandum of Law"] at pages 3 & 7);

    b.    unscrupulously created fraudulent claims and lawsuits (CSX Memorandum of Law at page 4);

    c.    allowed and encouraged railroad clients to commit larceny  (CSX Memorandum of Law at page 5);

    d.    created false 5001B work reports and/or encouraged CSX employees to complete false or fraudulent work reports.  (CSX Memorandum of Law at page 6);

    e.    devised a scheme by which fraudulent 5001B work reports would be stolen from CSX and would surreptitiously find there way into lawsuits (CSX Memorandum of Law at pages 6 & 7);

    f.    obtained CSX reports "under unauthorized purposed and with ill intent." (CSX Memorandum of Law at page 8);

    g.    conducted improper ex-parte communications "in an attempt to gain further improper access to CSX documents and employees." (CSX Memorandum of Law at page 9);

    h.    violated the Massachusetts Rules of Professional Conduct. (CSX Memorandum of Law  at page 9).

(Complaint at ¶ 10).  The plaintiffs' claims are also based upon the following alleged

statement made by the defendants:

> In sum, the facts of this case at least suggest that Mr. Collins and/or his Firm may have seen (sic) involved: (1) with the BLE's decision to create the 5001B reports in question; (2) the development of the substance of these reports; and (3) to steal them for their own purposes.

Complaint at ¶ 11.

The plaintiffs assert the following claims: libel (State Court Complaint at ¶¶ 6-16); libel *per se* (Complaint at ¶¶ 17-22); and intentional infliction of emotional distress (Complaint at ¶¶ 23-25).

The defendants removed this action to the United States District Court based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. The following is undisputed: that plaintiffs Collins, individually, and Collins, Collins & Donoghue are citizens of the State of New York; that defendant Flynn and Flynn & Associates P.C. are residents and citizens of the State of Massachusetts; that CSX is a Virginia corporation with its principal place of business in Florida. Defendant Hansen is a resident and citizen of New York. The defendants contend that there is no basis for the assertion of the plaintiffs' claims against Hansen and that Hansen was fraudulently joined to defeat diversity. (Docket No. 1 at page 1).

The plaintiff has moved to remand this action to the state court (Docket No. 5) asserting a lack of complete diversity and that the amount in controversy does not meet the necessary statutory threshold. The defendants, in lieu of filing an answer to the complaint, have moved to dismiss the plaintiff's complaint based upon an alleged failure to state a claim upon which relief can be granted, a failure to make sufficient service upon Flynn and Flynn & Associates, P.C. and a lack of personal jurisdiction over Flynn and Flynn & Associates, P.C. (Docket No. 16 at page

3

1). Finally, in the alternative, assuming the matter is not remanded to the state court, nor dismissed, the defendants seek to have the case transferred to the District of Massachusetts. (Docket No. 18).

**Motion to Remand[1]**

Before considering the defendants' motion to dismiss (or the motion to transfer venue), the Court must first resolve the plaintiffs' motion to remand to determine whether this Court has subject matter jurisdiction in this case. See Glatzer v. Bear Strearns & Co. Inc., 201 Fed. Appx. 98 (2d. Cir. 2006)(Court erred in denying motion to remand and therefore should not have considered motion to dismiss).[2]

The plaintiffs move to remand the case to the New York State Supreme Court citing a lack of diversity inasmuch as defendant Hansen is a New York citizen. The plaintiffs also assert that they do not seek damages equaling or exceeding $75,000. The defendants contend that Hansen was fraudulently joined for the purpose of defeating diversity jurisdiction, and that the plaintiffs' settlement demand of $65,000 does not resolve the amount in controversy for purposes of determining the monetary threshold for diversity.

---

[1] The Second Circuit has determined that a motion for remand is not a non-dispositive pretrial matter and that a Magistrate Judge can only render a Report & Recommendation with respect to such motions. Williams v. Beemiller, Inc., 527 F.3d 259 (2d. Cir. 2008).

[2] This is not a case in which all defendants seek dismissal based upon a lack of personal jurisdiction. See Cantor Fitzgerald, L.P, v. Peaslee, 88 F.3d 152 (2d. Cir. 1996). Although some of the defendants in the instant case, Flynn and Flynn & Associates, P.C., assert a lack of personal jurisdiction, the remaining defendants seek dismissal upon substantive arguments reflecting upon the merits of the plaintiffs' claims. Thus, the Court cannot properly address the motion to dismiss unless it is determined that the Court has subject matter jurisdiction over the dispute.

Complete Diversity

Section 1332(a) requires complete diversity between all plaintiffs and all defendants.  The defendants argue that, as a matter of law, the plaintiffs have articulated no basis upon which Hansen can be found liable for the claims asserted in complaint and that Hansen was simply added to frustrate diversity.  Under the doctrine of fraudulent joinder, courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court. Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). The defendant bears the heavy burden of proving this circumstance by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff. Id.; Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 302 (2d. Cir. 2004).

In determining the possibility that a plaintiff can state a cause of action under state law, a court sitting in diversity must look to the substantive law of the state in which it sits, including the forum state's choice of law rules.  In re Rezulin Prods. Liab. Litigation, 133 F.Supp. 2d 272, 280 (S.D.N.Y. 2001);  Qureshi v. St. Barnablas Hosp. Ctr.,  In tort cases such as the instant matter,  "New York applies the law of the state with the most significant interest in the litigation." Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir.1999) (citing Padula v. Lilarn Props. Corp., 84 N.Y.2d 519 (1994)). In making this inquiry, New York distinguishes between "conduct regulating" and "loss allocating" rules. Id. Where a conduct regulating rule such as defamation is in issue, New York courts apply the law of the place of the tort. Id.  The state of the plaintiff's domicile will often bear a significant relationship to the case in a defamation action, because it is assumed that the plaintiff suffers the most damage to his reputation in his home state. Reeves v. Am. Broad. Co., 719 F.2d 602, 605 (2d Cir.1983). However, this preference is

not conclusive. Lee, 166 F.3d at 545; Qureshi, 430 F.Supp. 2d at 286, n.3. Aside from the fact that the plaintiff has included the allegedly libelous statements in papers filed in this Court, there is no evidence in the record to suggest that the offending statements were published in New York (or any state other than Massachusetts). In cases where publication of the allegedly defamatory material has occurred in multiple states, courts have applied a multi-factor test to determine the place of the tort. Qureshi, 430 F.Supp. 2d at 286, n.3 citing Davis v. Costa-Gavras, 580 F.Supp. 1082, 1091 (S.D.N.Y.1984). These factors include the plaintiff's domicile, the location of the plaintiff's activity which gave rise to the alleged defamation, the defendants' domicile, and the place from which publication of the allegedly defamatory statements occurred. Quershi, 430 F.Supp. 2d at 286, n.3 citing Weinstein v. Friedman, 1996 WL 137313, at *8 (S.D.N.Y. 1996). Here, the allegedly libelous statements were published in Massachusetts, in a document filed with the District Court in Massachusetts, relating to Collins' representation of a plaintiff in Massachusetts. The defendants are domiciled in Massachusetts. The State of Massachusetts has a significant interest in this litigation, in that it arises from other litigation pending in that State, revolves around a publication in Massachusetts and implicates Massachusetts state law pertaining to the privilege attached to court filings in Massachusetts. The Court notes that the limited publication of the allegedly libelous statements in a court filing in the Massachusetts District Court significantly reduces the exposure of the published statements in New York; reduces the likelihood that Collins' reputation would be harmed in his home state; and thus, limits the State of New York's interest in the litigation. Indeed, as noted above, aside from their inclusion in this litigation, the plaintiffs have not demonstrated that the offending statements have been published in New York. In any event, considering the factors above, Massachusetts

has the most significant interest in this litigation. Therefore, the substantive law of the State of Massachusetts should apply to the claims in this case.

To prevail on a defamation claim "under Massachusetts law, a plaintiff must show that the defendant was at fault for the publication of a false statement of and concerning the plaintiff which was capable of damaging his or her reputation in the community, and which either caused economic loss or is actionable without proof of economic loss." Damon v. Moore, 520 F.3d 98 (1st Cir. 2008). Stanton v. Metro Corp., 438 F.3d 119, 123-24 (1st Cir.2006); Amrak Prods., Inc. v. Morton, 410 F.3d 69, 72 (1st Cir.2005); White v. Blue Cross & Blue Shield of Mass., Inc., 442 Mass. 64, 66, 809 N.E.2d 1034, 1036 (2004); Brauer v. Globe Newspaper Co., 351 Mass. 53, 55, 217 N.E.2d 736, 738 (1966). The plaintiff contends that Hansen is employed as a claims agent by CSX, and that he has worked with Flynn on the Granfield case. (Docket No. 22 at page 1). The defendants argue that the fact that Hansen was a claims agent working on the Granfield case does not provide a factual basis upon which Hansen can be held liable for statements made in a written document by CSX's attorney, Flynn, filed in federal court in Massachusetts. Moreover, the defendants assert that there is no possibility of recovery by Collins against Hansen inasmuch as the statements made in the document filed by Flynn on behalf of CSX in the Granfield case were subject to an absolute privilege that attaches to statements made in the context of litigation under Massachusetts law. (Docket No. 21 at page 7).

Massachusetts state law provides an absolute privilege to statements made in the context of litigation. Dolan v. Von Zweck, 477 N.E.2d 200, 201 (Mass. App. Ct. 1985). The absolute privilege "provides a complete defense even if the offensive statements are uttered maliciously or in bad faith," (Doe v. Nutter, McClennan & Fish, 41 Mass. App. Ct. 137, 140 (1996)), so long as

7

the challenged remarks are relevant or pertinent to the judicial proceedings. See Sullivan v. Birmingham, 11 Mass. App. Ct. 359, 362 (1981). Furthermore, the privilege applies to statements made in a judicial proceeding that pertain to the proceeding whether made by an attorney, a party or a witness. Sriberg v. Raymond, 345 N.E. 2d 882, 883 (Mass. 1976); Fisher v. Lint, 868 N.E.2d 161, 167 (Mass. App. Ct. 2007).

The plaintiff has presented no authority suggesting that an employee could be held liable for statements *made by an attorney* in a Memorandum of Law filed with a federal court on behalf of the employee's employer. The Court notes that the allegedly libelous statements upon which the plaintiffs' claims are based, as asserted in ¶10 of the complaint, in many instances do not appear to be verbatim quotes of the statements contained in the Memorandum of Law filed on behalf of CSX. See CSX Memorandum of Law attached as Exhibit A to the Complaint [hereafter referred to as the "CSX Memorandum of Law"]).[3] Further, the alleged libelous statements are not attributed to Hansen (or any other individual) in the CSX Memorandum of Law. The plaintiffs do not articulate a basis to hold the employee of a client responsible for unattributed language included by an attorney in a Memorandum of Law filed by the attorney on

---

[3] For example, the first statement attributed to the defendants in ¶10(a) of the Complaint is that the plaintiffs "artificially created a factual premise for whole-body-vibration lawsuits" which the plaintiffs suggest is included on pages 3 and 7 of the CSX Memorandum of Law. While one might paraphrase the language used on those pages to suggest the statement alleged by the plaintiffs, the word "artificially" does not appear on those pages. Similarly, in ¶10(c), the plaintiffs assert that the defendants stated that the plaintiffs "allowed and encouraged railroad clients to commit larceny" and suggests that this language appears on page 5 of the CSX Memorandum of Law. Again, while the language suggests that the defendants contended that certain individuals had been "stealing" the 5001B reports (CSX Memorandum of Law at page 6), the word "larceny" does not appear on those pages. The parties have not raised, and the Court does not address, whether the allegations meet the specificity requirements of Rule 3016 of the New York State Civil Practice Law and Rules.

behalf of the client. Thus, the plaintiffs have failed to state a claim sounding in libel as against Hansen.  In any event, the plaintiffs have failed, as a matter of law,  to rebut the fact that the statements underlying their claims in this matter are subject to the privilege under Massachusetts state law that attaches to statements made in a judicial proceeding.  Even if some basis existed to attribute the choice of words used by Flynn in the CSX Memorandum of Law to Hansen, words spoken by a witness in the course of judicial proceedings which are pertinent to the matter in hearing are absolutely privileged, even if uttered maliciously or in bad faith.  Significantly, the phrase "pertinent to the proceedings"  is "not to be construed narrowly." Aborn v. Lipson, 357 Mass. 71, 73, 256 N.E.2d 442 (1970).  The plaintiffs' argument that the alleged statements contained in the CSX Memorandum of Law are not pertinent to the Granfield lawsuit is not persuasive.  The fact that the alleged statements accuse Collins of unethical (and perhaps illegal) activity relating to the procurement of documents does not negate the relevance of the statements to the underlying litigation in that case.

Ultimately, the plaintiffs have failed to demonstrate the ability to properly assert a cause of action against Hansen in this case.  The Court finds that Hansen has been fraudulently joined in this matter and that complete diversity exists between the plaintiffs and defendants (CSX and Flynn).

Amount in Controversy

Diversity jurisdiction pursuant to 28 U.S.C. §§1332 also requires that the amount in controversy must equal or exceed $75,000 exclusive of interests and costs.  The party removing a case to federal court bears the burden of establishing facts supporting the jurisdictional amount.

Blockbuster Inc. v. Galeno, 472 F.3d. 53, 57 (2d. Cir. 2006).  Where, as here,  the pleadings do not establish the amount in controversy[4] and "where ... jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with 'competent proof' and justify its allegations by a preponderance of the evidence." United Food Commercial Workers' Union v. CenterMark Properties Meridian Square, Inc., 30 F.3d 298, 305 (2d Cir.1994). A defendant need not prove the amount in controversy to an absolute certainty. Instead, defendant "has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir.2000).

In the instant case, the defendants point to the fact that the plaintiffs allege that the offending statements were made with the intent to destroy Collins' professional reputation as an attorney and to destroy his Federal Employer's Liability Act ("FELA") practice of law. (Complaint at ¶¶ 9, 21, 24 and 25).  The defendants also assert that Collins' practice is lucrative, citing to numerous cases in which Collins obtained damages for clients in amounts ranging between $500,000 to $4,700,000.  (Docket No. 21 at pages 11-12).  The defendants argue that if the plaintiffs were deprived of even a single FELA case as a result of the allegedly defamatory statements, there is a reasonable probability that the injury suffered by the plaintiffs would exceed $75,000.  (Docket No. 21 at page 12).

The plaintiff does not dispute these assertions, but contends that the defendants cannot establish the monetary threshold in this case because, on February 7, 2008 [5], the plaintiffs offered

---

[4]  The prayer for relief stated in the complaint does not request a specific monetary amount as damages in this case.  See Complaint at ¶ 26.

[5]  The settlement offer was transmitted in a February 7, 2008 letter advising the defendants that Jonathan D. Estoff, Esq. of Miserandino, Celniker, Seegert & Estoff, P.C. would

to settle this case for a payment of $65,000. (Docket No. 7, Exhibit A). The defendants contend that the offer is an example of gamesmanship by the plaintiffs in an attempt to destroy diversity jurisdiction. The Court need not determine whether this gesture represents a genuine offer of settlement or a transparent attempt to defeat diversity. The plaintiffs do not dispute that the amount in controversy would exceed the jurisdictional threshold but for the settlement offer. Questions regarding the amount in controversy requirement are to be determined by looking at the case as of the time the case was removed. Blockbuster, Inc., 472 F.3d. at 56-57. In Purple Passion, Inc. v. RCN Telecom Services, Inc., 406 F.Supp.2d 245, 247 (S.D.N.Y. 2005), the Court aptly noted, in a comparable circumstance, "that to permit post-filing events to dictate jurisdiction for remand purposes facilitates gamesmanship and forum and judge shopping by encouraging plaintiffs filing in state court to seek exorbitant damages against the chance the case will not be removed, and then to reduce their demands if the case is removed to federal court, or not, depending on their happiness with the assigned judge. Such gamesmanship, and the resulting ping-ponging of cases from state to federal court and back again, should not be permitted." Purple Passion, 406 F.Supp.2d at 247. See also Quinones v. National Amusements, Inc., 2007 WL 1522621 (S.D.N.Y. 2007)(courts have in large measure and persuasively held that such post-removal changes in the amount of damages sought do not justify a remand);[6] Armstrong v.

---

be lead counsel for plaintiffs in this matter. (Docket No. 7, Exhibit A). The record does not reflect any appearance by Estoff in this case as of this date. The letter also stated that the plaintiffs intended to file a motion to remand the case to the New York state court.

[6] Indeed, in Quinones, the Court noted the absurd results which could occur by allowing post-removal changes in the amount in controversy to dictate diversity jurisdiction: "One of the cases cited by defendant for the notion that a court should honor this type of stipulation aptly illustrates the problem with this approach. In the cited opinion, the court recounts that the case was originally removed based on federal-question jurisdiction, that the defendant then filed a

ADT Sec. Services, Inc., 2007 WL 187693 (S.D.N.Y. 2007)(remand denied where plaintiff filed a post-removal amended complaint reducing damage allegation to $70,000); Carter v. Geldis, 2002 WL 1159904 (E.D.N.Y. 2002)(a plaintiff may not defeat removal by offering to reduce the amount of damages claimed, as diversity jurisdiction is determined as of the date the suit is filed).

The plaintiffs' offer to settle is not a binding resolution of the amount in controversy in this matter. In any event, at the time this case was removed to federal court, a reasonable probability existed that the amount in controversy exceeded the threshold for diversity jurisdiction. Based on the above, the Court finds that the defendants have established the existence of diversity jurisdiction pursuant to 28 U.S.C. §1332. The motion to remand the case to the state court should be denied.

**Motion to Dismiss**

In lieu of an answer in this case, the defendants have filed a motion to dismiss the complaint. (Docket No. 16). As noted above, the defendants assert that the plaintiff's claims are barred by a privilege under Massachusetts state law which attaches to statements made in the context of a judicial proceeding. The plaintiffs argue that the privilege does not apply to the comments in this case because they accuse the plaintiffs of unethical and illegal conduct, and

---

second removal notice based on diversity jurisdiction after the plaintiff had amended his complaint to eliminate any federal claim, that the case was then remanded by stipulation reciting that the plaintiff sought less than the jurisdictional amount, and that defendant filed a third notice of removal after the plaintiff sought a settlement in excess of the jurisdictional amount after remand. It also bears noting that the Leslie court did not address the question of the propriety of a stipulation-based remand, but rather simply noted that such a remand had previously been approved. Quinones, 2007 WL 1522621 at *3 n.6 (internal citations omitted).

thus, were not material or pertinent to any of the legal questions in the Granfield case. The record reflects that CSX issued subpoenas in the Granfield case, attempting to take the deposition of Collins and of a representative of the Collins, Collins & Donoghue law firm pertaining to whether Collins and his law firm participated in the creation or development of the evidence supporting Granfield's claim that he suffered an injury as a result of "whole body vibrations." (CSX Memorandum of Law at page 1-3). The defendants cited to two cases in which inquiry had been made as to whether the evidence used to support a plaintiff's claims had been engineered by a plaintiff's counsel[7] with the assistance of doctors making specious medical findings. (CSX Memorandum of Law at page 4).[8] In the Granfield case, the defendants contended that the plaintiff had disclosed that he, and other members of the Brotherhood of Locomotive Engineers ("BLE") had allegedly "illegally" taken certain CSX documents [referred to as "5001B reports"] from CSX property. CSX questioned the fact that several of the 5001B reports authored by an individual named Munger, Chairman of the a BLE chapter in Massachusetts, appeared to include language in the reports similar to a medical opinion, finding "lower back pain." (CSX Memorandum of Law at page 6). The defendants contended that many of these 5001B reports were being used as the factual foundation as the basis of legal claims. The defendants stated that the testimony provided by Granfield at his deposition revealed that the plaintiff in that case produced only selective 5001B reports and that Granfield admitted to have communications with

---

[7]  It is not suggested that Collins was involved in those cases.

[8]  In one of the cases cited by defendants in the CSX Memorandum of Law, the Court dismissed 90 lawsuits in which thousands of claimants had alleged injuries due to exposure to silica because the diagnoses in those cases had been manufactured by a group of doctors and lawyers working together. In re Silica Products Liability Litigation, 398 F.Supp.2d 563 (S.D.Tex. 2005).

several CSX employees, asking them to speak with representatives of the Collins law firm. (CSX Memorandum of Law at pages 8-9). The defendants wished to depose Collins regarding how these reports had been obtained and whether he or the Collins' law firm had a role in the creation of the reports. Collins filed a motion to quash the subpoenas. It was in response to that motion that the CSX Memorandum of Law was filed with the District Court in Massachusetts. The Court granted the motion to quash, finding that the subpoena were "an improper attempt to get at an attorney," to require recusal of plaintiff's counsel in that case, and that there was less burdensome means by which CSX had an opportunity to get the information they were seeking. (Docket No. 27-3 at pages 35-36, transcript of proceedings before Magistrate Judge Kenneth P. Neiman on December 12, 2007). In making his determination, Magistrate Judge Neiman stated that Flynn's use of language in the CSX Memorandum of Law was "over the top, hyperbole, inappropriate, unprofessional." (Docket No. 27-3 at page 32).

      The defendants cite to <u>Dolan</u>, <u>Aborn</u>, <u>Sriberg</u> and <u>Leavitt v. Bickerton</u>, 855 F.Supp. 455, 457 (D. Mass. 1994) for the proposition that any comments made in the context of the <u>Granfield</u> judicial proceeding are protected by the absolute privilege afforded by Massachusetts state law, notwithstanding the intent of the person making the statements, so long as the statements were "pertinent" to the litigation. (Docket No. 30 at page 2). The plaintiffs attempt to distinguish the <u>Dolan</u> and <u>Leavitt</u> cases because the comments in those cases were made against a party, and not against an attorney. This distinction is not persuasive. Under Massachusetts law, the privilege applies to comments made about counsel. <u>Aborn</u>, 357 Mass. at 73. The comments in the instant case, even if cast in inappropriate and inartful language, were "pertinent" to the <u>Granfield</u> litigation. The defendants raised questions relating to the Granfield's possession of the 5001B

reports, and Collins' role in the plaintiff's possession of those documents and the creation of those documents in the Granfield and other cases. The fact that the court in Granfield ultimately quashed the subpoenas seeking the deposition of Granfield's attorney on these issues does not obviate the fact that the issue was pertinent to that litigation. Again, the privilege is not to be narrowly construed. The standard as to pertinence requires only that the statements have some reasonable relation or reference to the subject of inquiry, or be one that may possibly be pertinent, with all doubts resolved in favor of the defendants. Aborn, 357 Mass at 73; Leavitt, 855 F.Supp. at 457. The plaintiffs have failed, as a matter of law, to articulate a factual or legal basis to preclude application of the privilege to the comments made in the CSX Memorandum of Law.

It is recommended that the motion to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure be granted.

**Personal Jurisdiction & Venue Issues**

Flynn and Flynn & Associates P.C. also move to dismiss the complaint based upon a lack of personal jurisdiction. The defendants contend that they have not been properly served with a summons and complaint in this matter. Flynn contends that service upon him was ineffective because it was made by Collins, a party to this action, in violation of C.P.L.R. 2103(a). (Docket No. 17 at page 12). The plaintiffs contend that service was made upon Flynn by William Paul Clark, as counsel for Collins. (Docket No. 26 at page 5). The defendants also contend that service upon Flynn & Associates, P.C. was ineffective inasmuch as the attempt to serve was made upon Michael Keohane, Esq. on behalf of Flynn & Associates, P.C. (Docket No. 17 at

15

page 13). The defendants contend that Keohane is an associate, not a partner or agent of the law firm, and therefore, not authorized to receive service on behalf of Flynn & Associates, P.C. In light of the Court's recommendation that the complaint be dismissed based upon the privilege asserted in this case, the Court need not address the factual issues arising from the service dispute.

The defendants also seek, as an alternative, to transfer the case to the United States District of Massachusetts (Docket No. 18). Although directed to do so (Docket No. 24), the docket does not reflect that the plaintiffs filed a response to the motion to transfer venue. In any event, in light of the recommendation that the complaint be dismissed, the Court need not address the motion to change venue.

**Conclusion**

Based on the above, it is recommended that the motion to remand the case to the state court be DENIED; that the motion to dismiss be GRANTED and that the motion to transfer venue be DENIED AS MOOT.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); <u>F.D.I.C. v. Hillcrest Associates</u>, 66 F.3d 566 (2d. Cir. 1995); <u>Wesolak v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

*/s/ Hugh B. Scott*
United States Magistrate Judge
Western District of New York

Buffalo, New York
July 21, 2008